UNITED STATES v. STEENE et al.

(District Court, N. D. New York. January 8, 1920. Supplemental Memorandum, January 12, 1920.)

1. WAR ⬿33—TERMINATION AS AFFECTING ESPIONAGE ACT; "END OF WAR."

The United States did not cease to be at war on the signing of the armistice with Germany as respects commission of the offenses enumerated in Espionage Act June 15, 1917, tit. 1, § 3, as amended by Act May 16, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c).

2. INDICTMENT AND INFORMATION ⬿125(20)—INDICTMENT FOR CONSPIRACY NOT DUPLICITOUS.

An indictment for conspiracy to violate section 3, tit. 1, Espionage Act June 15, 1917, as amended by Act May 16, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), by publishing disloyal, profane, scurrilous, and abusive language, *held* not duplicitous because it charged that such language was intended to bring the form of government of the United States and the Constitution thereof and the military and naval forces thereof into contempt, contumely, and disrepute.

---

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. WAR ☞4—PUBLISHING AND CIRCULATING DEFAMATORY MATTER VIOLATES ESPIONAGE ACT.

The publication and circulation of a handbill, containing pictures and printed text, *held* a violation of Espionage Act June 15, 1917, tit. 1, § 3, as amended by Act May 16, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), making it an offense when the United States is at war to willfully utter or publish any language intended to bring the form of government or Constitution of the United States into contempt or disrepute.

Criminal prosecution by the United States against Charles W. Steene, Frank L. Preston, and William Hotze. On demurrer to indictment. Overruled.

Dennis B. Lucey, U. S. Atty., of Ogdensburg, N. Y.
Seymour Stedman, of Chicago, Ill., for defendants.

GARVIN, District Judge. Defendants have been indicted for conspiracy to violate and for a violation of section 3 of title 1 of the Espionage Act approved June 15, 1917, and amended May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c). The indictment is in three counts and charges briefly:

First, a conspiracy to utter, publish, and distribute disloyal, profane, scurrilous, and abusive language about the form of government of the United States and the Constitution thereof, and the military and naval forces thereof, and language intended to bring the form of government of the United States and the Constitution thereof, and the military and naval forces thereof, into contempt, scorn, contumely, and disrepute, by the distribution of certain handbills which would and should persistently urge disloyalty against the United States government; as an overt act, the distribution of handbills to which reference will be presently made is alleged.

The second count alleges a violation of said section 3 in the manner above mentioned, by the distribution of said hand bills.

The third count sets forth that the defendants did utter, print, write, and publish language intending to incite and promote resistance to the United States and to promote the success of its enemies by distributing the aforesaid handbills.

The defendants pleaded not guilty, and later by permission of the court withdrew that plea, and have filed a demurrer setting forth numerous grounds of objection to the indictment, which may be summarized thus:

(1) The handbill (or a copy thereof) is not incorporated in the body of each count, but appears at the end of the indictment and attached thereto as an exhibit.

This objection was withdrawn during the argument, and it was agreed that the defendants would waive it, and would request the court to pass upon the sufficiency of the handbill.

[1] (2) No offense was committed, because the United States was not at the time at war with the Imperial German government and the Austrian-Hungarian government.

This contention cannot be sustained. The Supreme Court of the United States has recently held otherwise in the war-time prohibition cases.

[2] (3) The first count is duplicitous.

A careful reading of the count reveals nothing to indicate that anything but a conspiracy to commit an offense against the United States is charged. The offense involved is a violation of section 3 of the act, which violation is claimed to have been the result of language contained in handbill.

[3] (4) The circulation of the handbill complained of by the government is not a violation of law.

This is the real question involved. The handbills contain four pictures: One representing a man suspended by his wrists, apparently in a cell, under which appears "Hung by the wrists from ceiling for 8 Hours a Day. McNeil's Island, Washington." A second, the picture of a man whose appearance gives the impression of one being brutally struck with a club; under this appears "Political Prisoners Beaten with a Baseball Ba at Leavenworth Penitentiary." The third is that of a man chained to prison bars, under which is "Chained to the Bars 8 Hours a Day for Two Weeks on Bread and Water." The last is a representation of a man, barefoot, stripped to the waist, being lifted off his feet by a rope around his neck, which runs up over a beam and back into the hands of a man who stands near him, who is pulling it. This man who holds the rope, wears the style of hat common in the army. Near by is another man, with pistol in belt and wearing a similar hat, who is kicking the hapless victim. This is described as "Punishment of a Conscientious Objector in Disciplinary Barracks." These pictures appear in the four corners. The handbill is as follows:

"Attend the Mass Meeting, Moose Hall 235 East Genesee Street Friday, November 21 .8:00 P. M. To Protest Against These Atrocities and Voice the Following Demand: Mr. President—Let our people go. American Citizens, charged with no crime against persons or property and guilty only of expressing their political, industrial and religious beliefs, are subjected to these tortures in your prisons. These people were convicted in violation of the spirit of the Declaration of Independence and the Constitution of the United States. Their conviction was made possible only by the war hysteria prevailing at that time. Whatever justification those conditions gave no longer exists. The war is over. No justification exists, or ever did exist, for these brutal and inhuman tortures inflicted on defenseless victims by your agents and representatives. In the name of Liberty and Justice we demand the release of all prisoners whose alleged crimes consisted in the peaceable expression and maintenance of their political opinions, industrial activities or religious beliefs. Come to the meeting. Everybody Invited to Join in the above Demand  George R. Kirkpatrick will lecture on Political Prisoners in America  Under the Auspices of the Socialist Party  Admission 25 cents."

The Espionage Act—so called—supra, provides in part that—

"Whoever, when the United States is at war, shall willfully utter, print, write, or publish any disloyal, profane, scurrilous, or abusive language about the form of government of the United States, or the Constitution of the United States, or the military or naval forces of the United States, or the flag of the United States, or the uniform of the army or navy of the United States, or any language intended to bring the form of government of the United

States, or the Constitution of the United States, or the military or naval forces of the United States, or the flag of the United States, or the uniform of the army or navy of the United States, into contempt, scorn, contumely, or disrepute, or shall willfully utter, print, write, or publish any language intended to incite, provoke, or encourage resistance to the United States, or to promote the cause of its enemies, * * * shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

It will be observed that these provisions go much further than the preceding portion of the section, which is designed to prevent any act openly directed against the successful conduct of the war by the United States. The provisions here involved are obviously for the purpose of preventing the sort of abuse of the form of government which, harmless in itself, though usually not the utterance of those who believe in our national institutions, is calculated to inflame and arouse the ignorant and vicious to an actual attempt to bring about open disloyalty. The constitutional guaranty of free speech is unaffected by the conclusion that the pamphlet or handbill involved, rendered conspicuous by the pictures described (which are entirely unnecessary to announce a mass meeting), must be taken to mean that the form of government of the United States and the Constitution upon which it rests have proved inadequate to secure justice for American citizens, who have been not only unjustly convicted (the insinuation is clear that they have been convicted of no offense whatever), but during incarceration have been subjected to most inhuman tortures. Such an allegation, made during a period of war, when loyalty is to a great extent predicated upon belief that the form of government of the United States rests upon liberty and justice, is calculated to bring into disrepute the form of government and its Constitution, under which such conditions could exist, and likewise its military forces, whose members are responsible for the brutalities portrayed in the last-described picture.

When a mass meeting is assembled as a result of an invitation of this character, we may expect that resistance to the United States itself will follow, if the meeting is addressed in the manner outlined by the call, and that the demand upon the President to "Let our people go" will be followed by such action during and after the meeting as indicates a contempt for the Constitution and for the form of government which will not grant the demand so made. That the utterance be an open attack on the form of government or Constitution is not necessary. Indeed, the care with which the pamphlet seems to have been written suggests the desire to accomplish the result forbidden by the act without incurring the penalty involved in a violation. But, even if this was meant as a mere announcement of a public meeting, its form was well calculated to have the effect of arousing the contempt, scorn, contumely, and disrepute which Congress sought to prevent, and under the well-settled principle that one is presumed to intend the natural consequences of his act the indictment charges a crime.

Demurrer overruled.

### Supplemental Memorandum.

After the foregoing opinion was filed, counsel for the defendants suggested that the use of the word "calculated" therein resulted in the

judicial determination that that is a crime which is merely "calculated to"—i. e., "might"—have an effect forbidden by law, and which is in fact not prohibited by the statute; Congress having purposely, after careful consideration, omitted "calculated," meaning "may" or "might," from the act as passed. The word in question appears in the opinion three times. When first used it is synonymous with "intended." Where it appears elsewhere, it is used to convey, not a meaning of doubt, but of such degree of certainty as is humanly possible in determining what effect upon others acts or utterances will have. It is as though the court had said "must inevitably" instead of "is calculated to," and "is of a character which will" instead of "was well calculated to."